```
           UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

JUSTIN GIBSON,

    Plaintiff,

v.                              Civil Action No. 2:11-00229

SHENTEL CABLE CO.,
and ROBERT HAROLD,

    Defendants.


### MEMORANDUM OPINION AND ORDER

This matter is before the court pursuant to a <u>sua sponte</u> review of the court's subject matter jurisdiction.

### I.  Background

This action arises out of defendant Shentel Cable Company's ("Shentel") alleged wrongful termination of plaintiff Justin Gibson's employment.  Gibson is a citizen of Fayette County, West Virginia.  Defendant Robert Herrald[1] is also a citizen of West Virginia.  Shentel is a Virginia corporation. Gibson was formerly employed by Shentel at its location in Summersville, West Virginia.  He installed cable television and electronic communication services for Shentel customers in

---

[1] Herrald is incorrectly identified in the complaint as "Robert Harold."  The court herein uses the proper spelling of Herrald's last name.

Southern West Virginia.  Herrald was Gibson's supervisor at Shentel.

The complaint contains the following material factual allegations.  On June 26, 2009, Gibson incurred injuries while installing cable television services in Kingston, West Virginia.  (Compl. ¶ 11).  As a consequence, he could not complete the rest of his work day and went home early.  (Id.).  Gibson thereafter reported to Herrald certain "hazardous work conditions" (though the complaint does not specify what these conditions were) that contributed to his injuries.  (Id.).  Three days later, on June 29, 2009, Shentel terminated Gibson's employment.  (Id. ¶¶ 4, 12).  Gibson claims that he was wrongfully discharged for complaining about the hazardous work conditions to Herrald.

Gibson instituted this action on March 2, 2011, in the Circuit Court of Fayette County.  Shentel removed on April 7, 2011, invoking the court's diversity jurisdiction.  The complaint sets forth two counts against Shentel: Count I is for violations of the West Virginia Human Rights Act, and Count III asserts that Shentel is vicariously liable for the acts of its employee, Robert Herrald.  Count II is a claim for intentional infliction of emotional distress and/or outrage and is asserted only against Herrald.

## II. Diversity Jurisdiction

Shentel asserts in its notice of removal that Herrald, a nondiverse defendant, was fraudulently joined in this action to defeat diversity jurisdiction. (Shentel Notice of Removal ¶ 7). Gibson has not moved to remand and appears to have conceded that federal jurisdiction is proper. (See Proposed First Am. Compl. ¶ 5 ("the amount in controversy exceeds the jurisdictional amount" and "jurisdiction and venue are proper in the United States District Court for the Southern District of West Virginia.")). Nevertheless, the court is obligated to assess its subject matter jurisdiction even if the parties have not raised the issue. Sucampo Pharms. Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006); Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (en banc).

### A. Fraudulent Joinder Standard

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court." Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441). Federal district courts have original jurisdiction over actions between citizens

of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232–33)).

As <u>Hartley</u> illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. <u>See</u> <u>Hartley</u>, 187 F.3d at 425. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> * * * *
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

<u>Id.</u> at 425-26 (citations omitted). In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means

available." Mayes, 198 F.3d at 464 (internal quotations omitted).

Inasmuch as defendants do not allege any fraud in the pleading, the only question is whether Gibson has any possibility of recovery against Herrald in state court.

B. Analysis

The complaint asserts only one claim against Herrald: Count II for intentional infliction of emotional distress and/or outrage[2] ("IIED claim").  Defendants contend that this claim is time-barred as discerned from the face of the complaint. (Shentel Notice of Removal ¶ 7; Herrald Mem. in Supp. of Mot. to Dismiss ("Herrald Mem.") at 5-7).  Herrald expands upon this argument in his motion to dismiss as follows: (1) West Virginia law provides a one year statute of limitations for IIED claims; (2) Gibson's claim accrued on June 29, 2009, the date Shentel terminated his employment; and (3) Gibson filed suit on March 3,

---

[2] Under West Virginia law, the torts of outrage and intentional infliction of emotional distress are one in the same. See Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 424 (W. Va. 1998).

2011, more than one year after the accrual date. (Herrald Mem. at 5-7).

Herrald's statute of limitations argument is squarely foreclosed by controlling West Virginia precedent. As set forth in Syllabus Points 7 and 8 of Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419 (W. Va. 1998):

> 7. "A claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W.Va.Code, 55-2-12(b) (1959)." Syllabus Point 5, in part, Courtney v. Courtney, 190 W.Va. 126, 437 S.E.2d 436 (1993).
>
> 8. In claims for intentionally or recklessly inflicted emotional distress that arise from the termination of employment, the two-year statute of limitation for personal injuries begins to run on the date of the last extreme and outrageous conduct, or threat of extreme and outrageous conduct, which precipitated the termination of employment.

Id. at Syl. Pts. 7-8. Contrary to Herrald's assertions, then, it appears that Gibson's IIED claim arising out of the termination of his employment is subject to a two year statute of limitations. If Gibson's claim accrued, as Herrald maintains, on the date of his termination (June 29, 2009), then his March 3, 2011 filing date would be deemed timely under the two year statute of limitations.

Herrald nonetheless invokes <u>Christman v. American Cyanamid Company</u>, 578 F. Supp. 63 (N.D. W. Va. 1983), in support of his contention that IIED claims are subject to a one year limitations period.  The district court in <u>Christman</u> did conclude that the one year statute of limitations from West Virginia Code § 55-2-12 applies to IIED claims.  <u>Id.</u> at 66.  And the reasoning from <u>Christman</u> was even adopted by West Virginia's high court, at least temporarily, in <u>Funeral Services by Gregory v. Bluefield Hospital</u>, 413 S.E.2d 79, 84 (1991).  However, the court expressly overruled <u>Funeral Services</u> two years later in <u>Courtney v. Courtney</u>, 437 S.E.2d 436 (W. Va. 1993):

> A claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W.Va.Code, 55-2-12(b) (1959).  To the extent that <u>Funeral Services by Gregory v. Bluefield Hospital</u>, 186 W.Va. 424, 413 S.E.2d 79 (1991), expresses a contrary view, it is overruled.

<u>Id.</u> at Syl. Pt. 5.  Though acknowledging the decision in <u>Courtney</u>, Herrald maintains that the case is distinguishable.  He says that the plaintiff in <u>Courtney</u> brought an IIED claim in addition to separate tort claims against the same defendant, whereas the plaintiff here brings a standalone IIED claim.  (Herrald Mem. at 6-7).  The court does not discern, nor does Herrald explain, why this fact is relevant to determining the applicable statute of limitations.  In view of the unequivocal

8

statements in Courtney and Travis that IIED claims are governed by a two year limitations period, Herrald's reliance on the district court's decision in Christman is unavailing.

Apart from his statute of limitations defense, Herrald also contends in his motion to dismiss that plaintiff has failed to set forth adequate factual matter to sustain his IIED claim. (Herrald Mem. at 7-9). To prevail on an IIED claim, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, Travis, 504 S.E.2d at 419. The complaint contains the following allegations in support of Gibson's IIED claim:

> 4. The Defendant, Robert [Herrald], is an individual whom is employed by Shentel Cable Company and personally took actions to terminate the plaintiff's employment with his employer . . .
>
> * * * *
>
> 11. On or about June 26, 2009 during the course of his employment with the defendant, the plaintiff was injured during the installation of television cable services in Kingston, West Virginia which injuries prevented him from completing his work day and which also caused him to

report the hazardous work conditions to his supervisor, Robert [Herrald].

12. On or about June 29, 2009 the defendant terminated the plaintiff's employment as a television cable installer.

\* \* \* \*

17. The Plaintiff has been caused to suffer and sustain intentional or reckless infliction of emotional distress through the intimidating, defamatory, and slanderous conduct of the defendant, [Robert Herrald], individually, and through his capacity as an employee of the defendant, Shentel Cable Company.

18. The conduct of the Defendant, [Robert Herrald], was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency and is intolerable in a civil society.

19. The emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it.

20. As a result of the Defendant's extreme and outrageous conduct, the Plaintiff, was, is, and with a high degree of likelihood, will continue to be, emotionally distressed.

21. As a result of the aforementioned, your Plaintiff has suffered sorrow, mental anguish, past and future pain and suffering, and has otherwise been greatly damaged, with emotional distress.

(Compl. ¶¶ 4, 11-12, 17-21).

Although these allegations relay little factual content and may therefore have been susceptible to a Rule 12(b)(6)

dismissal,[3] the court reiterates that the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley, 187 F.3d at 424. Resolving all issues of fact and law in the plaintiff's favor, the allegations suggest that Herrald, in his capacity as Gibson's supervisor, intentionally inflicted emotional distress on Gibson through "intimidating, defamatory, and slanderous" conduct and by terminating his employment. The supreme court of appeals has permitted IIED claims against supervisory employees arising out of terminations of employment where "the employee's distress results from the outrageous manner by which the employer effected the discharge." Syl. Pt. 11, Roth v. DeFeliceCare, Inc., 700 S.E.2d 183 (W. Va. 2010) (quoting Syl. Pt. 2, Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219 (1994)); see also Travis, 504 S.E.2d at 426 (noting that "the existence of a special relationship in which one person has control over another, as in

---

[3] It is worth noting that the court does not endorse Gibson's view that a mere recitation of a claim's elements is sufficient to survive a motion to dismiss. (See Pl.'s Resp. to Herrald Mot. to Dismiss at 2 ("[i]t is only required that the Complaint set forth the elements of the claims against the defendant")). This is not an accurate statement of current federal pleading standards. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (a complaint that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist" and that "[t]he employer-employee relationship should entitle an employee to a greater degree of protection from insult and outrage than if he were a stranger to defendants") (internal quotations and citations omitted); id. at 431 ("a supervisor may be held individually liable for the tort of outrage when committed during the course of employment"). Thus, the court cannot say that Gibson has no "possibility of a right to relief" against Herrald in state court. See Hartley, 187 F.3d at 426. Inasmuch as the fraudulent joinder standard does not appear to be satisfied, Herrald's presence in this action defeats complete diversity of the parties and remand is proper.[4]

### III. Conclusion

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction. It is accordingly ORDERED that this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Fayette County.

---

[4] The court notes that Gibson moved for leave to file an amended complaint on May 10, 2011. The proposed amended complaint includes Gibson's claim for IIED, as well as additional claims, against Herrald. The court has no occasion to reach Gibson's motion for leave to amend in view of its jurisdictional ruling.

**The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Fayette County.**

DATED: August 5, 2011

John T. Copenhaver, Jr.
United States District Judge